**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BHARAT HEGDE,<br><br>                    Plaintiff,<br><br>          vs.<br><br>COUPA SOFTWARE INCORPORATED, ROB BERNSHTEYN, MICHELLE BRENNAN, KANIKA SONI, ROGER SIBONI, TAYLOE STANSBURY, SCOTT THOMPSON, and FRANK VAN VEENENDAAL,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Bharat Hegde ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.  Plaintiff brings this stockholder action against Coupa Software Incorporated ("Coupa" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Project CS Parent, LLC ("Parent") through merger vehicle Project CS Merger Sub, Inc. ("Merger Sub") (collectively with "Parent", "Thoma

Bravo") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a December 12, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Thoma Bravo will acquire all of the remaining outstanding shares of Coupa' common stock at a price of $81.00 per share in cash. As a result, Coupa will become an indirect wholly-owned subsidiary of Thoma Bravo.

3. Thereafter, on January 11, 2023, Coupa filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. Significantly, despite forming a Transaction Committee to oversee the Proposed Transaction, the Preliminary Proxy statement fails to disclose what powers that committee had in evaluating a potential transaction, including whether it had the power to veto a transaction not in the best interests of shareholders.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below,

the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Coupa, provided by Coupa management to the Board and the Board's financial advisors Qatalyst Partners LP ("Qatalyst"), and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Qatalyst, and provide to the Company and the Board

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

8. Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Coupa stockholder.

9. Defendant Coupa provides cloud-based business spend management platform that connects its customers with suppliers worldwide. Coupa is incorporated under the laws of the State of Delaware and has its principal place of business at 1855 S. Grant Street San Mateo, California. Shares of Coupa common stock are traded on the Nasdaq Stock Exchange under the symbol "COUP".

10. Defendant Rob Bernshteyn ("Bernshteyn") has been a Director of the Company at all relevant times.

11. Defendant Michelle Brennan ("Brennan") has been a director of the Company at all relevant times.

12. Defendant Kanika Soni ("Soni") has been a director of the Company at all relevant times.

13. Defendant Roger Siboni ("Siboni") has been a director of the Company at all relevant times.

14. Defendant Tayloe Stansbury ("Stansbury") has been a director of the Company at all relevant times.

15. Defendant Scott Thompson ("Thompson") has been a director of the Company at all relevant times.

16. Defendant Frank Van Veenendaal ("Van Veenendaal") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 10 - 16 are collectively referred to as the "Individual Defendants."

18. Non-Party Parent is an affiliate of the Thoma Bravo, one of the largest private equity firms in the world, with more than $120 billion in assets under management as of September 30, 2022. The firm invests in growth-oriented, innovative companies operating in the software and technology sectors. Leveraging the firm's deep sector expertise and proven strategic and operational capabilities, Thoma Bravo collaborates with its portfolio companies to implement operating best practices, drive growth initiatives and make accretive acquisitions intended to accelerate revenue and earnings.

19. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Coupa maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

23. Coupa Software Incorporated provides cloud-based business spend management platform that connects its customers with suppliers worldwide. The company provides visibility into and control over how companies spend money, optimize supply chains, and manage liquidity, as well as enables businesses to achieve savings that drive profitability. Its platform offers procurement, invoicing, expense management, and payment solutions that form the transactional engine for managing a company's business spend; and specialized solutions, including strategic sourcing, contract management, contingent workforce, supplier risk management, supply chain design and planning, treasury management, and spend analysis. It serves businesses in various industries, including healthcare and pharmaceuticals, retail, financial services, manufacturing, and technology. The company markets its platform primarily through a direct sales force. Coupa Software Incorporated was incorporated in 2006 and is headquartered in San Mateo, California.

24. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the May 5, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted such milestones as total revenues of $196.4 million, an increase of 18% compared to the same period last year. Further, subscription revenues were $178.5 million, an increase of 27% compared to the same period last year.

25. Speaking on these positive results, CEO Defendant Bernshteyn commented on the Company's positive financial results as follows, "We began the fiscal year strong by delivering record quarterly total revenue and subscription revenue, and also yielding over 20% operating cash flow and adjusted free cash flow margins,"

26. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Coupa. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

27. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Coupa to enter into the Proposed Transaction without providing requisite information to Coupa stockholders such as Plaintiff.

*The Flawed Sales Process*

28. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29. Despite appointing a Transaction Committee to oversee the Proposed Transaction, the Preliminary Proxy statement fails to disclose what powers that committee had in evaluating a potential transaction, including whether it had the power to veto a transaction not in the best interests of shareholders.

30. Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

32. On December 12, 2022, Coupa and Thoma Bravo issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

**SAN MATEO, Calif., Dec. 12, 2022** – Coupa Software (NASDAQ: COUP), a leader in Business Spend Management (BSM), today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm. This is an all-cash transaction with an enterprise value of $8.0 billion. Upon completion of the transaction, Coupa will become a privately held company.

The transaction includes a significant minority investment from a wholly owned subsidiary of the Abu Dhabi Investment Authority (ADIA). Under the terms of the agreement, Coupa shareholders will receive $81.00 per share in cash, which represents a 77% premium to Coupa's closing stock price on November 22, 2022, the last full trading day prior to media reports regarding a possible sale transaction involving the company. The transaction consideration also represents a premium of approximately 64% to the volume weighted average closing price of Coupa stock for the 30 trading days ending on November 22, 2022.

"For more than a decade, we've been building an incredible Business Spend Management Community and have proudly cemented our position as the market-leading platform in our category. We're looking forward to partnering with Thoma Bravo and accelerating our vision to digitally transform the Office of the CFO," said Rob Bernshteyn, chairman and chief executive officer at Coupa. "While our ownership may change, our values do not. Every one of us at Coupa will continue to put our customers at the center of everything we do and help them maximize the value of every dollar they spend."

"This transaction is the result of a deliberate and thoughtful process that included engagement with both strategic and financial parties," said Roger Siboni, Coupa's lead independent director. "The Board evaluated the transaction against the company's standalone prospects in the current macroeconomic climate and determined that the compelling and certain cash consideration in the transaction provides superior risk-adjusted value relative to the Company's standalone prospects. The Board is unanimous in its belief this transaction is the optimal path forward and in the best interest of our shareholders."

"Coupa has created and led the large and growing Business Spend Management category. We've followed the company's success for many years and have been impressed by its consistent track record of delivering high levels of value for its global customer base," said Holden Spaht, a Managing Partner at Thoma Bravo. "We look forward to partnering with Rob and the rest of the management team to keep investing in the company's product strategy while driving growth both organically and through M&A."

"We couldn't be more excited to partner with the talented Coupa team to keep building on the incredible franchise they've created in the Business Spend Management space," said Brian Jaffee, a Partner at Thoma Bravo. "Our shared vision, combined with Thoma Bravo's strategic and operational expertise, will enable Coupa to continue driving innovation, better serve its customers and

accelerate important growth initiatives during this next chapter as a private company."

*Potential Conflicts of Interest*

33. The breakdown of the benefits of the deal indicate that Coupa insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Coupa.

34. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name of Beneficial Owner | Shares Beneficially Owned Shares | Percent |
|---|---:|---:|
| **Named Executive Officers and Directors:** | | |
| Robert Bernshteyn[1] | 1,182,218 | 1.5% |
| Anthony Tiscornia | 6,452 | * |
| Todd Ford[2] | 73,399 | * |
| Mark Riggs[3] | 13,148 | * |
| Robert Glenn[4] | 30,495 | * |
| Michelle Brennan[5] | 1,842 | * |
| Roger Siboni[6] | 47,786 | * |
| Kanika Soni | — | * |
| Tayloe Stansbury | 11,751 | * |
| Scott Thompson[7] | 66,650 | * |
| Frank van Veenendaal[8] | 101,965 | * |
| All Executive Officers and Directors as a Group (12 persons)[9] | 1,542,438 | 2.0% |
| **5% Stockholders:** | | |
| The Vanguard Group[10] | 6,732,757 | 8.8% |
| BlackRock, Inc.[11] | 5,694,669 | 7.4% |
| T. Rowe Price Associates, Inc.[12] | 5,142,074 | 6.7% |
| Viking Global Investors LP[13] | 4,168,030 | 5.4% |

35. Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff

and other public stockholders of the Company. Notably the Preliminary Proxy statement fails to provide an accounting of these equity awards nor the cash value they will be exchanged for.

36. In addition, certain employment agreements with certain Coupa executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

**Potential Payments to Named Executive Officers**

| Name | Severance ($)(1) | Company Equity Awards ($)(2) | Perquisites / Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Rob Bernshteyn | 2,100,000 | 54,905,364 | 57,000 | 57,062,364 |
| Anthony Tiscornia | 640,000 | 2,868,858 | 36,000 | 3,544,858 |
| Robert Glenn | 850,000 | 4,911,111 | 25,000 | 5,786,111 |
| Mark Riggs | 807,500 | 5,327,046 | 36,000 | 6,170,546 |
| Todd Ford | — | 3,449,547 | — | 3,449,547 |

37. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38. Thus, while the Proposed Transaction is not in the best interests of Coupa, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

39. On January 11, 2023, the Coupa Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or

provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

   a. Adequate disclosure as to what powers that the Transaction Committee had in evaluating a potential transaction;

   b. Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

   c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Thoma Bravo and/or its affiliates, would fall away; and

   d. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Coupa's Financial Projections*

41. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Coupa provided by Coupa management to the Board and Qatalyst, and relied upon by Qatalyst in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Qatalyst reviewed, "reviewed the Financial Forecasts prepared by the management of the Company".

43. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Coupa management provided to the Board and Qatalyst. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

44. With regard to the *Financial Forecasts* prepared by Coupa, the Preliminary Proxy Statement fails to disclose material line items for important metrics

   a. Non-GAAP Operating Income, including all underlying inputs, metrics, and assumptions, including specifically: cost of goods sold and operating expenses, the impact of stock-based compensation, amortization of acquired intangibles and certain non-recurring items;

   b. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: the impact of cash taxes, the net impact of depreciation and amortization, changes in net working capital, capital expenditures, and other operating cash inflows and expenses, as well as the specific "certain adjustments including a long-term effective cash tax rate" made for fiscal year 2028; and

   c. Adjusted Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: the net impact of interest income and expenses, adjusted for taxes.

45. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46. This information is necessary to provide Plaintiff, in their capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Qatalyst's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

48. In the Preliminary Proxy Statement, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

   a. The inputs, metrics, and assumptions used to determine range of discount rates from 9.5% to 13.0%;
   b. The Company's weighted average cost of capital utilized;
   c. The implied net present value of a corresponding terminal value of the Company utilized;
   d. The specific inputs and assumptions used to determine the utilized long-term cash tax rate of 15%;
   e. The specific inputs and assumptions used to determine the utilized range of fully diluted enterprise value to next-twelve-months' estimated UFCF multiples of 20.0x to 32.0x;
   f. The Company's cash and cash equivalents as of October 31, 2022;

      g.   The Company's implied net present value of estimated federal tax savings due to its net operating losses for the fiscal years 2028 and beyond;

      h.   the face value of the outstanding Convertible Notes as of October 31, 2022; and

      i.   The Company's redeemable non-controlling interests in Coupa K.K. (the Company's Japanese joint venture), as of October 31, 2022.

50.   With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized CY2023E Revenue multiple reference range of 3.8x to 7.0x; and

      b.   The number of fully diluted shares of Company common stock outstanding as of December 8, 2022.

51.   With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific date on which each transaction closed;

      b.   The value of each transaction compared;

      c.   The specific inputs and assumptions used to determine the utilized LTM Revenue Multiple reference ranges of 6.0x to 11.0x;

      d.   The number of fully diluted shares of Company common stock outstanding as of December 8, 2022; and

      e.   The specific inputs and assumptions used to determine the utilized NTM Revenue Multiple reference ranges of 5.5x to 9.5x.

52.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

53.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's

determination that the Proposed Transaction is in his best interests as a public Coupa stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

54. Plaintiff repeats all previous allegations as if set forth in full herein.

55. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

56. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

57. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

58. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

61. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

62. Plaintiff repeats all previous allegations as if set forth in full herein.

63. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

64. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

65. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Coupa' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

66. The Individual Defendants acted as controlling persons of Coupa within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Coupa to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Coupa and all of its employees. As alleged above, Coupa is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 13, 2023

**BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*